**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MICHELLE ELIZA ORTIZ,  :
  :
  Plaintiff,  :
  :            MEMORANDUM DECISION
  -against-  :            AND ORDER
  :            11 Civ. 5633 (GBD)
METROPOLITAN TRANSIT AUTHORITY,  :
  :
  Defendant.  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GEORGE B. DANIELS, United States District Judge:

Plaintiff Michelle Eliza Ortiz, a police officer with the Metropolitan Transportation Authority Police Department ("MTAPD"), brings this action against Defendant Metropolitan Transportation Authority ("MTA") pursuant to the Federal Employers Liability Act ("FELA"), 45 U.S.C. §51 *et seq.*, alleging that Defendant caused Plaintiff's injury by failing to provide a reasonably safe workplace. Specifically, Plaintiff asserts that Defendant was negligent for its: 1) failure to comply with its minimum staffing policy of having at least three officers assigned to patrol the dining concourse of Grand Central Station; 2) failure of its employees to physically assist Plaintiff in subduing a disorderly individual; 3) failure to adequately train and warn Plaintiff of dangers inherent in her work; and 4) failure to provide reliable radios to MTAPD officers. Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Defendant's motion for summary judgment is GRANTED.

## BACKGROUND

Plaintiff was hired by Defendant as a police officer in 2006 and remains employed in that capacity. Deposition Transcript of Michelle Ortiz, dated April 5, 2012 ("Ortiz Tr."), 10:19-21,

1

11:25-12:2, Ex. C to Declaration of Helene R. Hechtkopf, dated May 25, 2012 ("Hechtkopf Decl."). While applying for this position, Plaintiff received and read through the MTAPD job description, which outlined the potential hazards of the job. Ortiz Tr. 13:11-15; Hechtkopf Decl. Ex. G, MTA Police Officer Job Description.[1] She testified that she was aware of the dangers of being a police officer and that her physical safety could be at risk. Ortiz Tr. 14:14-22. After joining the MTAPD, she attended the police academy for six months and received training on conducting arrests, using handcuffs, batons, and rubber guns, and completing necessary paperwork as part of her police duties. Ortiz Tr. 15:10-15, 16:18-21, 17:4-17.

Prior to joining the MTAPD, Plaintiff was an officer with the Baltimore City Police Department, a position she began upon completing ten months of training. Ortiz Tr. 10:12-14. In two years as a Baltimore police officer, she conducted approximately 75 arrests. Ortiz Tr. 8:25-9:5, 9:23-10:14. After joining the MTAPD, she conducted approximately 20 arrests and gained experience dealing with perpetrators who resisted arrest. Ortiz Tr. 22:23-23:8.

On January 21, 2011, Plaintiff and her partner Officer Rafael Reyes were assigned to the 5-Lincoln post in MTAPD's District 5, which includes Grand Central Terminal.[2] At least five supervisors and eleven police officers were on duty that day. Ortiz Tr. 72:19-73:5. At approximately 10:00 am, Officer Reyes first observed a man, later identified as Jarrel Somerset, resting or sleeping on a bench in Grand Central's dining concourse. Deposition Transcript of Rafael Reyes, dated May 17, 2012 ("Reyes Tr."), 37:22-38:5; Hechtkopf Decl. Ex. D, MTA Police Department Incident Report. After initially allowing Somerset to remain where he was,

---

[1] The job description that Plaintiff received and read specified that a police officer may be required to do things such as use physical force, "[s]ubdue persons resisting arrest during a violent rage," "[d]isarm violent armed suspects," and "[b]reak up fights between two or more persons." Ortiz Tr. 13:1-14:13.
[2] Grand Central Terminal is distinct from Grand Central Station, which is the subway portion of the building. Ortiz Tr. 12:16-22. The 5-Lincoln post covers the lower level of Grand Central Terminal, including the dining concourse. Ortiz Tr. 68:11-69:18-21, 73:6-13.

Reyes returned at approximately 11:00 am, saw Somerset on the same bench, and asked Somerset to leave. Reyes Tr. 38:9-25. When Reyes returned to the spot a second time approximately ten minutes later, Somerset appeared to be sleeping again. Reyes Tr. 39:2-11.

After again asking Somerset to leave, and upon issuing several warnings and requests for identification, Reyes informed Somerset that he was going to arrest him. Reyes Tr. 39:12-21. Seeing that Somerset was confrontational, Reyes requested assistance over the radio. Reyes Tr. 39:22-40:4, 40:14-19. Plaintiff, who was returning from a break, heard Reyes's call and began running towards Reyes. Ortiz Tr. 75:5-76:7. When she arrived, she observed Reyes in a verbal altercation with Somerset, and she called for additional units. Ortiz Tr. 77:16-17. After making the request, Plaintiff observed another MTAPD officer next to her.[3] She also heard two of her supervisors, Lieutenant Dan Nash and Sergeant Rosalie Grascia, responding to her call. Ortiz Tr. 77:5-79:4.

Somerset continued to defy Reyes's orders, even after Reyes used pepper spray on Somerset. Ortiz Tr. 79:10-81:4; Reyes Tr. 41:8-12. As Reyes, Ortiz, and the third officer attempted to grab Somerset's hands to try to handcuff him, Somerset began fighting them off. Ultimately, Plaintiff, Reyes, Nash, Grascia, Accardi, Sergeant Pizzo and Officer Fazio were all on the scene in an attempt to subdue Somerset as he continued to resist. Reyes Tr. 41:16-25, 43:14-44:2, 47:5-48:4; Grascia Tr. 21:13-21; Ortiz Tr. 80:15-21. One of the supervisors on the scene issued another radio call requesting additional backup. Ortiz Tr. 80:10-14. Ultimately,

---

[3] The testimonies of Plaintiff and Reyes are inconsistent with respect to the identity of the third officer to arrive on the scene. Plaintiff testified that she saw Officer Donald Accardi next to her as Reyes was arguing with Somerset. Ortiz Tr. 77:23-25. Reyes's testimony indicates that Lieutenant Nash was the third officer. Reyes Tr. 40:21-25. Regardless of the identity of the third officer, however, there is no factual dispute in the record that at least one other MTA officer was present before any physical confrontation occurred.

Somerset was handcuffed and brought back to District 5 Base for processing.  Grascia Tr. 23:23-24.

Upon returning to the base, Plaintiff discovered that she had injured her thumb during the altercation.  Ortiz Tr. 92:17-93:25.  She was taken by ambulance to New York Presbyterian Hospital, where she was initially diagnosed with a sprained thumb.  She was later diagnosed with a severed ligament in her thumb after visiting a doctor at the Hospital for Special Surgery.  Ortiz Tr. 40:23-41:8.  Upon having surgery on her thumb, Plaintiff remained out of work with pay until April 2011, after which she returned to work on light duty.  Ortiz Tr. 31:24-32:9. Following physical therapy, she returned to work on full duty starting in August 2011.  Ortiz Tr. 43:21-44:7.

## LEGAL STANDARD

Summary judgment is appropriate where the evidence, viewed in the light most favorable to the non-moving party, shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Vacold, L.L.C. v. Cerami, 545 F.3d 114, 121 (2d Cir. 2008).  The burden rests upon the moving party to show that there is no genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A fact is "material" only where it will affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For there to be a "genuine" issue of fact, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." Id.  In determining whether there is a genuine issue of material fact, the Court is required to resolve all ambiguities and draw all inferences in favor of the non-moving party.  Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir.

4

2004). Where there is no evidence in the record "from which a reasonable inference could be

drawn in favor of the non-moving party on a material issue of fact," summary judgment is

appropriate. <u>Caitlin v. Sobol</u>, 93 F.3d 1112, 1116 (2d Cir. 1996).

<h2 style="text-align:center">LIABILITY UNDER FELA</h2>

To establish a claim under FELA, a plaintiff must prove that (1) the defendant is a

railroad engaged in interstate commerce; (2) the plaintiff was an employee of the defendant and

was acting in the course of his employment; (3) the defendant or one of its employees or agents

was negligent; and (4) the plaintiff suffered an injury that resulted in whole or in part from such

negligence.[4]  45 U.S.C. § 51.

Notwithstanding the Second Circuit's application of a "relaxed standard for negligence"

in FELA cases, <u>Williams v. Long Island R.R. Co.</u>, 196 F.3d 402, 406 (2d Cir. 1999), and a

"strong federal policy in favor of letting juries decide FELA cases," <u>O'Hara v. Long Island R.R.

Co.</u>, 665 F.2d 8, 9 (2d Cir. 1981), FELA does not impose strict liability on employers for injuries

that take place on or near a railroad operation.  A plaintiff must proffer "at least... some evidence

that would support a finding of negligence." <u>Id.</u>; <u>see also</u> <u>Sinclair v. Long Island R.R.</u>, 985 F.2d

74, 77 (2d Cir. 1993) (quoting <u>Roberts v. Consolidated Rail Corp.</u>, 832 F.2d 3, 6 (1st Cir. 1987)

for the proposition that "[p]laintiffs are ... required to prove the traditional common law elements

of negligence: duty, breach, foreseeability, and causation.").

A railroad may be liable under FELA if it breaches its duty to provide a reasonably safe

workplace for its employees. <u>Shenker v. Baltimore & O.R.R.</u>, 374 U.S. 1, 7 (1963).  An

employer breaches its duty under FELA if it "knew or should have known of a potential hazard

in the workplace, and yet failed to exercise reasonable care to inform and protect its employees."

---

[4] Elements (1) and (2) are not in dispute in this case.

Haas v. Delaware & Hudson Ry. Co., 282 F. App'x 84, 87 (2d Cir. 2008) (quoting Williams, 196

F.3d at 406). Reasonable care is determined in light of whether or not a particular danger was

foreseeable. Id; Syverson v. Consol. Rail Corp., 19 F.3d 824, 826 (2d Cir.1994). Foreseeability

in FELA actions requires "proof of actual or constructive notice to the employer of the defective

condition that caused the injury." Sinclair, 985 F.2d at 77 (citation omitted).

      In addition to establishing an employer's negligence, a claimant must show that he or she

suffered an injury that resulted "in whole or in part" from such negligence. 45 U.S.C. § 51.

Proximate cause under FELA is analyzed under a more lenient standard than at common law.

See, e.g., Sinkler v. Missouri Pacific R. Co., 356 U.S. 326, 329-30 (1958). To result in liability,

the employer's negligence need only to have caused the injury in whole or part, a requirement

the courts have interpreted to mean, to any degree, no matter how slight. See Rogers v. Missouri

Pacific R. Co., 352 U.S. 500 (1957); Williams, 196 F.3d at 406-407.

## ORTIZ'S FELA CLAIMS AGAINST MTA

### A. Inadequate Staffing of 5-Lincoln

      Plaintiff's primary contention is that summary judgment is inappropriate because there is

a disputed issue of material fact as to whether Defendant complied with its own minimum

staffing requirement for Grand Central Terminal on January 21, 2011, and whether its alleged

failure to do so created an unreasonably dangerous place to work. Pl.'s Mem. of Law in Opp'n

to Def.'s Mtn. for Summ. J. at 18 (Pl's Opp'n Mem.). Specifically, Plaintiff testified that it was

Defendant's policy to assign three officers to patrol 5-Lincoln and the dining concourse area to

ensure that two officers would patrol together at all times, even when one officer went on a

break. Ortiz Tr. 67:2-69:16. Plaintiff, however, offers no evidence apart from her own vague

recollections and personal beliefs to prove that such a policy exists. Ortiz Tr. 69:5-69:16. She

6

concedes that she has never seen a written policy dictating a minimum officer count, and that she was not even certain that the policy she was thinking of was an MTA policy.  Id.  The non-existence of such a policy is further corroborated by the testimony of other MTA employees, including an MTAPD Inspector.  See Grascia Tr. 31:11-16; Hechtkopf Supp. Decl. Ex. A, Decl. of Kevin King, ¶ 2-3.

To survive a summary judgment motion notwithstanding her inability to establish the existence of a minimum officer count policy, Plaintiff must produce evidence sufficient to permit a reasonable jury to find that Defendant had actual or constructive notice of the potential hazard created by its staffing decision.  Plaintiff offers no proof apart from her own conclusory statement that understaffing 5-Lincoln was a "safety hazard", Pl's Opp'n Mem. at 19, that Defendant had notice of.  The vague assertion offered by Plaintiff on this issue is insufficient to reasonably justify a conclusion that Defendant knew or should have known about a problem with its staffing policy.  See Haas, 282 F. App'x at 88; Higgins v. Metro-North R.R. Co., 318 F.3d 422, 427 (2d Cir. 2003).

More importantly, Plaintiff cannot establish that Defendant's failure to assign a third officer to patrol 5-Lincoln with herself and Officer Reyes caused her injury.  Plaintiff refutes her own claim by testifying that, before she engaged in any physical contact with the perpetrator, at least a third officer had responded to the scene.[5]  Ortiz Tr. 77:5-78:14.

Plaintiff's claim that Defendant was negligent by failing to adequately staff 5-Lincoln with more than two officers on patrol at the time of her injury is therefore dismissed.

---

[5] As noted previously, Plaintiff's undisputed testimony on this issue is corroborated by Reyes, who also testified that at least one other officer was present before any physical altercation took place.  Reyes Tr. 40:21-25.

### B.  MTAPD Supervisors' Failure to Physically Assist in Somerset's Arrest

Plaintiff also argues that Defendant should be held vicariously liable under FELA because two of Plaintiff's supervisors failed to physically assist Plaintiff in subduing and arresting Somerset.  It is undisputed that there were at least five officers on the scene and that at least three officers were engaged with the perpetrator prior to the arrest.  See Oral Argument Tr. 49:15-22.  Additionally, Plaintiff testified that she was not aware that she had been injured until well after Somerset was arrested and brought back to MTAPD base for processing.  Given the number of officers already physically engaged with the perpetrator and without knowledge of any injury suffered by any of the involved officers, supervisors Grascia and Nash made a discretionary decision to refrain from directly participating in the altercation.  See also Reyes Tr. 13:17-14:10 (stating that, except for this incident, he had never seen or heard of a supervisor becoming physically involved in an arrest, and that ordinarily a supervisor's role is to supervise). Plaintiff has failed to demonstrate that there was any hazard created by MTAPD's supervisory discretion and that Defendant should have been aware of that hazard.  Thus, even under FELA's liberal standard, the facts in this case are insufficient to support a finding of negligence by a reasonable jury on this claim.

Similarly, Plaintiff fails to establish that her supervisors' decision not to physically assist in subduing Somerset caused her injury in whole or in part.  She does not provide any evidence to suggest that Nash and Grascia's participation in the altercation with Somerset would have prevented her injury.  By the time Nash and Grascia arrived in response to the radio request for backup, Reyes, Plaintiff, and at least one another officer were already physically engaged with the perpetrator.  Plaintiff makes no showing whatsoever that any additional physical force by her supervisors would have resulted in a different outcome.

For these reasons, Plaintiff's claim that Defendant is vicariously liable for supervisors Grascia and Nash's decision not to physically intervene in Somerset's arrest is dismissed.

### C. Inadequate Training and Failure to Warn of the Dangers of MTAPD Duties

Plaintiff further alleges that Defendant was negligent for failing to provide sufficient training and proper warning to Plaintiff regarding the dangers of her job. Pl's Opp'n Mem. at 5. In support of her claim, Plaintiff specifically points to Reyes's testimony that "the MTA provides no training to officers on how to respond in a situation where one of the homeless [individuals] in the dining concourse refuses to cooperate with an officer's request that he leave". Pl's Opp'n Mem. at 2. The evidence indicates Plaintiff's extensive experience and training as a police officer in two different cities. Plaintiff received ten months of training prior to starting her duties as a Baltimore police officer and attended the police academy for six months after joining the MTAPD. She conducted approximately 20 arrests with the MTAPD and approximately 75 arrests as a Baltimore police officer. The fact that Defendant did not provide a specialized course in subduing a homeless person in Grand Central Station, even under FELA's relaxed standard of negligence, is insufficient to support a finding of negligence by a reasonable jury.

Plaintiff's claim that she was not properly warned about the dangers of her job is similarly unsupported by the factual record. Plaintiff herself testified that she knew that her job as an MTA police officer was potentially dangerous, Ortiz Tr. 14:14-18, that it involved physical risks, Ortiz Tr. 14:19-22, and that she would expect to use physical force and subdue persons resisting arrest. Ortiz Tr. 13:24-15:13. She also testified that she had received a job description that listed these job duties before she applied for her position. Ortiz Tr. 13:11-15.

Additionally, Plaintiff again fails to make any causal connection between either Reyes's or her own alleged lack of training and her thumb injury. She neither articulates any specific

9

training by the Defendant that would have prevented her injury, nor provides any explanation as to how that additional training could have specifically resulted in a different outcome.

Plaintiff's claim that Defendant was negligent for its failure to train and failure to warn Plaintiff of the dangers of working as an MTA police officer is dismissed.

### D. Inadequate Radios

Plaintiff's final argument is that there are disputed issues of material fact as to whether or not the police radios used by Plaintiff and Reyes functioned properly when they issued calls for backup after encountering Somerset on January 21, 2011. Pl's Opp'n Mem. at 18. She alleges specifically that Reyes's inability to hear any response from other officers after issuing a call for backup confirms the existence of radio "dead spots" at Grand Central Terminal and demonstrates Defendant's failure to provide a safe workplace for its employees. Irrespective of whether or not Reyes heard anyone respond to his request, there is no factual dispute that Plaintiff and at least one other officer responded to that specific call. Ortiz Tr. 75:21-76:7, Reyes Tr. 43:8-12. Additionally, the two subsequent radio calls made from the same location, including Plaintiff's call, also succeeded in bringing further backup to the scene.[6] Ortiz Tr. 92:3-10, Reyes Tr. 46:12-14. Thus, the factual record shows that both Ortiz and Reyes's radios fulfilled their essential function of alerting other officers and summoning them to the scene.

Plaintiff provides no evidence for a reasonable jury to determine that any alleged malfunctioning of MTA radios even slightly contributed to her thumb injury. Specifically, she claims that Reyes's testimony that he heard no response to his call, and the fact that "it took no fewer than three radio calls before enough officers arrived on 5-Lincoln to put Somerset under

---

[6] Sergeant Grascia and Lieutenant Nash arrived after Plaintiff made a second call for assistance. Still more officers showed up after Nash made a third call for additional backup.

arrest", collectively create an inference that malfunctioning radios caused her injury in part. Plaintiff provides no evidence that any officers failed to respond to any of the radio calls because they did not receive the transmissions.

Plaintiff's claim that Defendant was negligent by equipping MTA police officers with faulty radios is not supported by the record evidence.

## CONCLUSION

Defendant's motion for summary judgment is GRANTED.  This case is dismissed.  The Clerk of the Court is directed to close this case.


Dated:  January 4, 2013
        New York, New York


SO ORDERED:

GEORGE B. DANIELS
United States District Judge